IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEONARDO WORLDWIDE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:14-CV-02660-N |
| PEGASUS SOLUTIONS, INC. n/k/a DHISCO ELECTRONIC DISTRIBUTION, INC., | § § § § § | |
| Defendant. | § § | |

# ORDER

This Order addresses the following motions: (1) Defendant Pegasus Solutions, Inc.'s ("Pegasus") motion for summary judgment [134], (2) Pegasus's motion to exclude expert testimony [141], (3) Plaintiff Leonardo Worldwide Corporation's ("Leonardo") motion for summary judgment [160], (4) Leonardo's motion to exclude expert testimony [174], (5) Pegasus's motion to strike [182], (6) Pegasus's motion to strike [189], (7) Leonardo's motion for leave to file supplement [196], and (8) Leonardo's motion to strike [205]. The Court grants in part and denies in part Pegasus's motion for summary judgment, grants in part and denies in part Pegasus's motion to exclude expert testimony, denies Leonardo's motion to exclude expert testimony; and deems the remaining motions moot.

## I. THE ORIGIN OF THE MOTIONS

This Order assumes familiarity with the basic underlying facts of this action, as set forth in the Court's January 9, 2015 Order 1–2 [38], which addressed Pegasus's first motion to dismiss. On April 16, 2015, the Court entered an Order addressing Pegasus's second motion to dismiss. *See* Order 1–2, April 16, 2015 [57]. On November 23, 2015, the Court entered an Order addressing Pegasus's third motion to dismiss. *See* Order, November 23, 2015 [127]. As a result, Leonardo's only remaining claims are for tortious interference with contracts, unfair competition, tortious interference with prospective contracts, fraud, and breach of contract.

Several motions are now pending before the Court. Pegasus moves for summary judgment on all of Leonardo's claims and on its request for attorney's fees. Pegasus also moves to strike portions of Leonardo's appendix submitted in response to Pegasus' motion for summary judgment. Leonardo moves to supplement the same appendix. Finally, Pegasus moves to strike the expert testimony of Dr. Stephen Prowse, Leonardo's damages expert.

Leonardo moves for partial summary judgment on its breach of contract claim. Pegasus moves to strike portions of Leonardo's appendix submitted in support of Leonardo's motion for partial summary judgment. Leonardo, in turn, moves to strike portions of Pegasus's appendix submitted in response to Leonardo's motion for partial summary judgment. And lastly, Leonardo moves to strike the expert testimony of Ms. Erica Bramer, Pegasus's rebuttal damages expert.

On May 10, 2016, the Court granted Leonardo's motion to defer [167].  *See* Order 1–2, May 10, 2016 [235].  The Court granted Leonardo leave to supplement its response to Pegasus's motion for summary judgment.  *Id.* at 2.  The Court also granted Pegasus leave to reply to the supplemental response.  *Id.*  All the motions are now ripe for the Court's review.

## II. THE COURT STRIKES PORTIONS OF PROWSE'S EXPERT TESTIMONY

Expert testimony is admissible if: (1) the expert is qualified; (2) the testimony is relevant to the lawsuit; and (3) the testimony is reliable.  FED. R. EVID. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  Pegasus challenges Prowse's testimony on the grounds of relevance and reliability.  Expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702.  Relevance "entails a preliminary assessment . . . of whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).  Reliability, on the other hand, requires a determination as to "whether the reasoning or methodology underlying the testimony is scientifically valid . . . ." *Id.*

Leonardo offers Prowse as an expert on damages that Leonardo sustained as a result of Pegasus's alleged unlawful conduct.  Leonardo maintains that Pegasus's unlawful conduct caused it to lose several contracts and slash pricing on its VScape and Syndication lines of business.  Accordingly, Prowse estimates the amount of profits that Leonardo lost in each of these lines of business.  Altogether, Prowse opines that Pegasus caused Leonardo damages in the amount of $6,369,312.  *See* App. in Supp. of Def.'s Mot. to Exclude 6 [142] ("Def.'s

Daubert App."). The Court finds that Prowse's testimony regarding Syndication damages is admissible, but that the testimony regarding VScape damages is not.

### *A. The VScape Damages Opinion Is Inadmissible*

Prowse's testimony regarding the VScape product line is not relevant to the trier of fact's consideration of the evidence in this case. The VScape product line is a digital media management platform that hotel chains ("Chains") can use to organize, store, retrieve, and distribute digital media. *See* Def.'s Daubert App. 8. To reach his estimate, Prowse compares two five-year budget forecasts that Leonardo developed for the VScape product line in 2013 and 2014. *Id.* at 10–12. After accounting for variable costs and an annual discount rate, Prowse estimates that Leonardo lost $3,559,970 in revenue on VScape. *Id.*

Leonardo does not allege that Pegasus caused damage to its entire VScape line of business; rather, Leonardo contends that Pegasus's conduct affected specific contractual relationships with specific Chains. Prowse's damages estimate for the VScape contracts does not analyze the net income that each of these contractual relationships would have yielded. As a result, Prowse's testimony does not allow a trier of fact to calculate damages to the VScape product line to a reasonable degree of probability. *Cf. Exel Transp. Servs., Inc. v. Aim High Logistics Servs., LLC*, 323 S.W.3d 224 (Tex. App. – Dallas 2010, pet. denied) (holding evidence of lost profits legally insufficient where expert calculated loss of net income to entire company as opposed to the four accounts affected by defendants' conduct). Because Prowse's testimony regarding Leonardo's lost profits on the VScape product line is irrelevant, the Court strikes this portion of his opinion.

### *B. The Syndication Damages Opinion Is Admissible*

Prowse's testimony regarding the Syndication product line is both relevant and reliable. The Syndication product line is a solution for online travel intermediaries and websites ("Channels") to source, manage, and display hotels' digital media. *See* Def.'s Daubert App. 12. For Syndication, Prowse obtained a list of lost or discounted contracts from Leonardo, and, based on historic pricing figures and customer life for similar contracts, estimated that Leonardo lost $2,809,342[1] on Syndication. *See id.* at 13–14.

Because Prowse performed a lost profits analysis that accounted for the value of each affected contractual relationship, his estimate regarding Syndication damages is relevant. Prowse's opinion is also reliable. Pegasus urges the Court to strike Prowse's testimony because he fails to account for competing causes, he underestimates certain costs of business, and he takes Leonardo's representations at face value without further scrutiny. But the issue of causation is reserved for the trier of fact, and the rest of Pegasus's objections go towards the weight of Prowse's opinion, not its admissibility. Accordingly, the Court declines to strike this portion of Prowse's opinion.

### III. THE COURT DOES NOT STRIKE BRAMER'S TESTIMONY

Leonardo moves to strike the expert testimony of Pegasus's rebuttal damages expert, Bramer. Leonardo contends that Bramer improperly criticizes Prowse's Syndication

---

[1]$2,158,641 (lost contract damages) + $650,701 (discounted contract damages) = $2,809,342 (total Syndication damages)

damages estimate for not excluding or putting a value on potential alternative causes, and for using inflated pricing models.[2]  The Court overrules the objections.

With respect to the first objection, the Court notes that there are two causation issues at play here.  The causation issue reserved for the trier of fact is whether Pegasus's conduct "was a substantial factor in causing the injury 'without which the harm would not have occurred.'"  *See COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App. – Dallas 2004, pet. filed) (quoting *Doe v. Boys Clubs of Greater Dallas, inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).  If the trier of fact answers this question affirmatively, then the trier of fact must determine whether Pegasus's conduct was the sole cause of Leonardo's lost contracts with the Channels, or whether other competing causes led to the loss.  This second causation issue relates to the amount of damages that the trier of fact should attribute to Pegasus's conduct, and is therefore a proper topic for expert testimony on damages.

Bramer is qualified to offer expert testimony on the value of Leonardo's Syndication business and the competing causes for its lost profits.  Bramer has significant experience and education in the areas of strategy, operations, and corporate finance and valuation.  *See* App. in Supp. of Pl.'s Mot. to Exclude 2 [175] ("Pl.'s Daubert App.").  Bramer also holds multiple accreditations in these areas.  *Id.*  Leonardo contends that Bramer lacks the expertise to opine on competing causes because she has little or no knowledge of Leonardo's business, its market, or its customers.  The Court finds that, at most, this argument goes towards the

---

[2]Leonardo also contends that Bramer offered improper rebuttal testimony regarding Prowse's VScape damages estimate.  Because the Court strikes this portion of Prowse's testimony, Leonardo's additional contentions are moot.

weight of Bramer's opinions, not the sufficiency of her qualifications. Accordingly, the Court overrules this objection.

Leonardo argues that Bramer's analysis is speculative because she does not take any position on whether the factors she cites actually contributed to Leonardo's Syndication damages. In her opinion, Bramer claims that many Channels developed their own sources for visual content, and that the free version of Syndication competed with and cannibalized its paid version. *See id.* at 8–9. Bramer also cited problems with Leonardo's market perception, declining quality assurance, and staff turnover. *Id.* The Court finds that these opinions are not purely hypothetical, and that their connection to the facts of the case is sufficient to render Bramer's opinion relevant to the issue of damages. The Court overrules this objection.

Leonardo's last objection relates to Bramer's claim that Prowse should have calculated Syndication damages based on a discounted pricing model. Leonardo counters that Pegasus's alleged unlawful conduct caused it to develop the alternative pricing model cited by Bramer. The Court finds that this argument goes toward the weight, not the admissibility, of Bramer's opinion. Accordingly, the Court overrules the objection.

### IV. THE COURT GRANTS SUMMARY JUDGMENT IN PART AND DENIES IT IN PART

#### A. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making

this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City*

*of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. No Admissible Proof of Damages as to the VScape Line of Business

Besides Prowse's expert opinion, Leonardo presents six additional sources of evidence regarding its asserted damages: Paolo Boni's declaration, Stephen McDonald's declaration and deposition excerpts, John McAuliffe's declaration, Elana Palmer's declaration, and Mark Charlinski's declaration. *See* Pl.'s Resp. to Def.'s Mot. for Summary J. 49 [171] ("Pl.'s Resp."). For the reasons below, the Court rejects each of these sources.

In Texas, to recover lost profits, "the injured party must do more than show that they suffered some lost profits." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). The rule is that lost profits "must be shown by competent evidence with reasonable certainty." *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). The Boni, Palmer, and McAuliffe declarations assert that Pegasus's conduct caused Leonardo to suffer lost profits, but they do not provide any estimate or calculation of those damages. *See* App. in Supp. of Pl.'s Resp. 852–54, 884-85, 1105-07 [172] ("Pl.'s MSJ App."). Accordingly, they are legally insufficient proof of damages.

In addition, "[r]ecovery of lost profits must be predicated on one complete calculation." *Heine*, 835 S.W.2d at 85. McDonald's declaration and deposition excerpts testify to Leonardo's downgraded revenue projections, increased churn, and diminished actual revenue for the VScape line. However, "[l]ost profits are damages for the loss of net income to a business . . . ." *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). McDonald

does not estimate net income; rather, he offers only the revenue portion of the calculation. *See* Pl.'s MSJ App. 1098, 1252–58. The Court finds that McDonald's testimony is insufficient proof of damages.

Finally, the Charlinski declaration describes the various price discounts that Leonardo offered to Channels on its Syndication products as a result of Pegasus's conduct. Notably, the Charlinski declaration does not offer proof of damages to Leonardo's VScape line of business. *See id.* at 1087–88.

Although Leonardo has offered more than a scintilla of admissible evidence of Syndication damages, Leonardo has failed to meet its burden of proving VScape damages. As explained below, this omission narrows Leonardo's claims significantly.

### C. Tortious Interference with Existing Contracts

Leonardo premises its claim for tortious interference with existing contracts on Pegasus's communications with Leonardo's Chain customers. Leonardo has not presented admissible evidence of damages to its VScape line of business. *See supra* Part IV.B. Because damages is an essential element of a claim for interference with existing contracts, *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993), the Court grants summary judgment in favor of Pegasus on this claim.

### D. Tortious Interference with Prospective Contracts

Leonardo premises its claim for tortious interference with prospective contracts on Pegasus's communications with potential Channel customers. To establish this claim, Leonardo must submit proof of four elements:

> (1) a reasonable probability that the parties would have entered into a contract; (2) an independently tortious or unlawful act by the defendant that prevented the contractual relationship; (3) the defendant committed the act with a conscious desire to prevent the contract or knew that such interference was substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the interference.

*Advanced Nano Coatings, Inc. v. Hanafin*, 478 F. App'x 838, 845 (5th Cir. 2012) (citing *Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App. – Houston [14th Dist.] 2010, no pet.)). Pegasus contends that Leonardo has failed to meet its burden of proof on the first, second, and fourth elements. Although not all of the evidence meets this standard, the Court finds sufficient issues of material fact remain to sustain the claim.

***1. Independently Tortious Conduct That Prevented the Contractual Relationship.* –** First, Leonardo submitted sufficient evidence to establish a genuine issue of material fact as to whether Pegasus made fraudulent or negligent misrepresentations to the Channels that prevented them from entering into contracts for Syndication with Leonardo. According to Leonardo, Pegasus's misrepresentations consisted of telling the Channels that they did not need to enter into separate contracts with Leonardo to continue using Leonardo's image links. Leonardo contends that Pegasus falsely assured the Channels that they would continue to receive images even after the expiration of Pegasus's Strategic Partnership Agreement ("SPA") with Leonardo.

To the extent that some of the Channels never used Leonardo's images in the first place,[3] the Court agrees that Pegasus's conduct did not prevent Leonardo from entering into

---

[3]These Channels include Bookit BV, Constellation Network, Fore Representation, Horse21, Hotel Travel limited (makemytrip.com), Hotelied, Kalhaven Holdings, Luxury

contracts with all of the allegedly lost Channels.  However, Leonardo's evidence suggests that Pegasus's employees knew their representations to the Channels regarding potential disruptions in service were false, *see* Pl.'s MSJ App. 1230, 1239–40, 1290–94, 1433, and that Pegasus sent the exact opposite message to the Chains, *see id.* at 471, 473.  The evidence also suggests that Pegasus had a financial motive to prevent the Channels from signing with Leonardo, as some of the Channels demanded reduced fees with Pegasus once they learned that a secondary contract with Leonardo was necessary.  *See id.* at 643, 649.  Finally, Leonardo submitted evidence suggesting that some of the Channels mistakenly relied on Pegasus's assurances when they decided not to enter into contracts with Leonardo and later faulted Pegasus for misguiding them.  *See id.* at 693–98, 738.  These facts, taken as true, are sufficient to meet the second element of independently tortious conduct.

***2. Actual Harm or Damage as a Result of the Interference.*** – Second, Leonardo's evidence establishes a genuine issue of material fact as to the fourth element of actual harm or damages.  Granted, some of the cited Channels ultimately entered into contracts with Leonardo.[4]  "Merely claiming that the contract would have been more advantageous . . . does

---

Link, Lychee.com, and Virgin Holidays.  *See* Def.'s Br. in Supp. of Mot. for Summary J. 19 [135] ("Def.'s Br.").  The parties dispute whether Booked.net and Touris Marketing ever used Leonardo's images.  *Compare id.*, *with* Pl.'s Resp. 32 n.7.  For purposes of the motion for summary judgment, the Court assumes that they did.

[4]These Channels include Orbitz, Priceline, Trisept, Interactive Hotel Solutions, Groupsize, Fore Representations & Travel, ImagineIf, and Thinkhotels.  *See* Def.'s Br. 30.

not satisfy the requirement that a business relationship be *prevented*."[5]  *U.S. Enercorp Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 704 (W.D. Tex. 2013).  Leonardo cannot recover these discounts as damages under a claim for tortious interference with prospective contracts.  Nevertheless, Leonardo has presented admissible evidence of damages for those contracts that Leonardo had a reasonable probability of entering into but nonetheless lost as a result of Pegasus's conduct.  *See supra* Part II.B.

*__3. Reasonable Probability That the Parties Would Have Entered into a Contract.__* – Finally, the Court finds that a genuine issue of fact remains as to whether Leonardo had a reasonable probability of reaching agreements with the other Channels.  To establish a reasonable probability of prospective contract, "[i]t is not necessary to prove that the contract would have certainly been made but for the interference," but "[m]ore than mere negotiations must have taken place."  *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 109 (Tex. App. – El Paso 1997, pet. denied); *see also Bradford v. Vento*, 997 S.W.2d 713, 732 (Tex. App. – Corpus Christi 1999, *rev'd in part on other grounds*, 48 S.W.3d 749 (Tex. 2001)) (finding reasonable probability where plaintiff "had considerable experience in selling [the product], a large collection of merchandise, and an established and expanding customer base").

In this instance, Leonardo has presented evidence that the Channels required access to hotel images, *see* Pl.'s MSJ App. 613, and that some of them were already using Leonardo's image links, *see id.* at 1080–81.  Leonardo further explains that it was the largest

---

[5]The Court notes that this rule differs from the separate issue of whether rendering a contract less profitable is actionable by a claim for tortious interference with existing contracts.

supplier of visual content in the industry. *See id.* Finally, the parties do not dispute that some of the Channels actually did enter into contracts as a result of the expiration of the SPA, albeit for discounted prices. These facts support a finding of reasonable probability.

In response, Pegasus contends that, by the time of the alleged misrepresentations, growth in Leonardo's Syndication business had begun to stall. Pegasus notes that many of the remaining Channels were too small to afford Leonardo's services, *see* App. in Supp. of Def.'s Mot. for Summary J. 671, 749–50 [136–40] ("Def.'s MSJ App."), while others opted to receive images from other sources, some of which were free, *see id.* at 214–15, 467–68, 714. In addition, Pegasus argues that Leonardo has not submitted proof that it was in negotiations with all of the Channels, *see* Pl.'s Resp. 22–26, and that several Channels did not give any explanation for their decision to forgo Leonardo's services, *see* Def.'s MSJ App. 222; *see also* Def.'s Br. 20–23. Leonardo's Vice President of Global Enterprise Sales, Charlinski, admitted that negotiating Syndication agreements "often take months or years." Pl.'s MSJ App. 1079.

The Court holds that Leonardo has presented sufficient evidence for a reasonable trier of fact to find that Leonardo had a reasonable probability of entering into contracts with the Channels but for Pegasus's interference. When viewed in the light most favorable to Leonardo, the facts show that there was substantial demand for Syndication, and that Leonardo was in a position to satisfy it. In such circumstances, Texas law does not require the identification of specific lost contracts to prove a reasonable probability of securing new business. *See, e.g.*, *Bradford*, 997 S.W.2d at 732. Thus, the fact that Leonardo was not in

individual negotiations with all of the Channels does not defeat its claim. The Court denies summary judgment on Leonardo's claim for tortious interference with prospective contracts.

### *E. Breach of Contract*

Leonardo claims that Pegasus breached several provisions of the SPA and the Statement of Work ("SOW"). A breach of contract claim requires proof of: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.*C., 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.)). Because Leonardo has not submitted admissible evidence of VScape damages, Leonardo must show that Pegasus's breach caused it to suffer Syndication damages in order to sustain this claim. Despite Leonardo's four separate theories of breach, the Court concludes that Leonardo cannot meet this standard.

First, Leonardo claims that Pegasus refused to endorse or market Leonardo's services in violation of sections 7.1 and 9.1 of the SOW. However, these provisions refer to the endorsement of Leonardo's services to Chains, not to Channels. Leonardo has not submitted proof that Pegasus's violation of these provisions caused any damages to Leonardo's business with the Channels.

Second, Leonardo contends that Pegasus pursued a competing image management business in violation of section 10.1 of the SPA. Notably, Pegasus never launched an image management line of business, and Leonardo did not identify any business opportunities that

ORDER – PAGE 15

it lost as a result of Pegasus's conduct on this front. Leonardo claims that "[b]ecause Pegasus was pursuing its own business for competition, it was no longer motivated to comply with the terms of the SPA, which required the parties to support one another." *See* Pl.'s Resp. 21. As explained above, however, Leonardo has not shown that Pegasus's violation of the SPA's endorsement provisions caused any damages to Leonardo's business with the Channels.

Third, Leonardo accuses Pegasus of providing a copy of Leonardo's contract proposal to ICE Portal in violation of section 11.1 of the SPA. Again, Leonardo fails to show how Pegasus's disclosure caused any losses to Leonardo. Alternatively, Leonardo contends that Pegasus violated this provision by using the proposal to develop its own competing image management business. For the reasons stated above, this theory fails for lack of proof of causation.

Finally, in its Third Amended Complaint [75], Leonardo alleged that Pegasus distributed Leonardo's visual content to ICE Portal in violation of sections 7.4 and 10.2 of the SOW. Pegasus moved for summary judgment on this claim, citing a lack of evidence. *See* Def.'s Br. 47–48. Leonardo failed to respond to this part of Pegasus's motion, and the Court finds no evidence suggesting that Pegasus violated these provisions.

Leonardo has abandoned part of its breach of contract claim, and it has failed to submit proof of causation for the rest of its theories. The Court holds that Pegasus is entitled to summary judgment on the breach of contract claim.

### *F. Fraud by Omission*

To prove a claim for fraud by omission in Texas, Leonardo must show: (1) Pegasus failed to disclose a material fact within its knowledge; (2) Pegasus knew that Leonardo was ignorant of the fact and did not have an equal opportunity to discover the truth; (3) Pegasus intended to induce Leonardo to take some action by failing to disclose the fact; and (4) Leonardo suffered injury as a result of acting without knowledge of the undisclosed fact. *See Bradford*, 48 S.W.3d at 754. In addition, Leonardo must show that Pegasus had a duty to disclose the omitted fact. *Id.* at 755. Pegasus contends that Leonardo has failed to provide proof of a duty to disclose, a material omission, justifiable reliance, intent to deceive, causation, and injury.[6]

The Court holds Pegasus is entitled to summary judgment on this claim. Leonardo contends that, if Pegasus had been frank about its intentions, Leonardo would have ceased negotiating a new strategic partnership agreement and begun proactively contacting Channels regarding its Syndication services. *See* Pl.'s Resp. 40. However, Leonardo has provided no proof that Pegasus intended to postpone Leonardo's overtures in this manner, or that Leonardo's delayed realization caused it to lose these business opportunities. Leonardo also claims that Pegasus's fraudulent omission caused it to reveal confidential information, but as the Court has already explained, *see supra* Part IV.E, Leonardo failed to submit proof that this disclosure resulted in any damages to Leonardo's Syndication line of business.

---

[6]As with the other claims, Leonardo's fraud by omission claim is limited to its Syndication damages.

Accordingly, the Court grants summary judgment in favor of Pegasus on the fraud by omission claim.

### G. Unfair Competition

In Texas, a claim for unfair competition requires "that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). Leonardo has presented sufficient evidence to avoid summary judgment on its claim for tortious interference with prospective contracts. Accordingly, Leonardo's unfair competition claim survives summary judgment as well.

### V. THE COURT DENIES SUMMARY JUDGMENT ON EXEMPLARY DAMAGES REQUEST

Leonardo seeks exemplary damages under Texas Civil Practice and Remedies Code § 41.003(a). The trier of fact may award exemplary damages under this provision if Leonardo proves by clear and convincing evidence that Pegasus unlawfully harmed Leonardo through fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1). Because the Court finds genuine issues of material fact remain as to whether Pegasus made fraudulent or negligent misrepresentations to the Channels, the Court denies summary judgment on the request for exemplary damages.

### CONCLUSION

The Court grants in part and denies in part Pegasus's motion to exclude Prowse's testimony, denies Leonardo's motion to exclude Bramer's testimony, and grants in part and

denies in part Pegasus's motion for summary judgment. Given this outcome, the Court determines that all other pending motions are moot. Those claims remaining for trial are: (1) tortious interference with prospective contracts with Channels, and (2) unfair competition.

Signed July 28, 2016.

_____
David C. Godbey
United States District Judge